UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Custom Stud, Inc., | Civil No. 21-310 (DWF/TNL) |
| Plaintiff, | |
| v. | |
| Meadow Lark Agency, Inc., | MEMORANDUM OPINION AND ORDER |
| Defendant, Third-Party Plaintiff/ Counter Defendant, | |
| v. | |
| Advanced Specialized Carriers, LLC, | |
| Third-Party Defendant/ Counter Claimant. | |

John C. Holper, Esq., Winthrop & Weinstine, PA, counsel for Plaintiff.

Kyle Nelson, Esq., Loren Ungar, Esq., and Michelle Rognlien Gilboe, Esq., Lewis Brisbois Bisgaard & Smith LLP, counsel for Meadow Lark Agency, Inc.

Christopher R. Morris, Esq. and Lauren Janochoski, Esq., Bassford Remele, PA, counsel for Advanced Specialized Carriers, LLC.

INTRODUCTION

This matter is before the Court on Defendant Meadow Lark Agency, Inc.'s ("Meadow Lark") motion for summary judgment on Plaintiff Custom Stud, Inc's ("Custom Stud") breach of contract claim. (Doc. No. 60.) For the reasons set forth below, the Court grants Meadow Lark's motion.

## BACKGROUND

Six years ago, Custom Stud contacted Meadow Lark to retain its brokerage services to secure transportation of certain equipment from Minnesota to Alabama. (Doc. No. 64 ("Collett Decl.") ¶ 4, Ex. 1.) At that time, Custom Stud employee Ann Muenchow emailed Meadow Lark employee Carmen Capron, stating that she "ha[d] another equipment load to move" and asking Capron to contact her about available drivers. (*Id.*) In the same email, Muenchow specified the rate, the length and type of truck required, and that the load needed a tarp. (*Id.*) In a responding email, Capron told Muenchow that Meadow Lark had identified a carrier for the equipment at the requested rate. (*Id.*) Muenchow then sent a rate confirmation document to Capron, which included pick-up instructions. (*Id.* ¶ 12, Ex. 4.)

Two days later, Meadow Lark entered into a broker/motor carrier agreement with Advanced Specialized Carriers, LLC ("Advanced"). (*Id.* ¶ 10, Ex. 2.) As part of this agreement, Advanced agreed to transport shipments procured by Meadow Lark. (*Id.*) The agreement also provided that Advanced would become "fully responsible/liable for the freight when it takes/receives possession thereof . . . regardless of whether a bill of lading has been issued, and/or signed, and/or delivered to [Advanced]." (*Id.*) Advanced additionally promised to maintain "cargo, personal injury, public liability, [and] motor vehicle liability . . . insurance" and sent a certificate of insurance to Meadow Lark. (*Id.*) When Meadow Lark received the rate confirmation from Custom Stud, it forwarded the information to Advanced. (*Id.* ¶ 13, Ex. 5.)

Advanced's driver picked up Custom Stud's equipment in Lakeville, Minnesota, on May 15, 2015.  (Doc. No. 69 ("Salaba Decl.") ¶ 3.)  When Advanced delivered the equipment on June 23, 2015, much of the equipment was damaged and a drill press was missing.  (Doc. No. 63 ("Ungar Decl.") ¶ 6, Ex. C.)

In February 2021, Custom Stud sued Meadow Lark for breach of contract.  (Doc. No. 1 ("Compl.").)  Custom Stud alleges that Meadow Lark made various promises to Custom Stud, outside of the email exchange, ensuring that the equipment would be "timely and securely transported and delivered to the intended recipient in an undamaged condition."  (*Id.* ¶¶ 5-9.)  Following discovery, Meadow Lark moved for summary judgment.  (Doc. No. 60.)  Custom Stud opposes the motion.  (Doc. No. 66.)

## DISCUSSION

I.     **Legal Standard**

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A party opposing a motion for summary judgment "may not rest upon mere allegation or denials in his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256.  The Court views the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009).

## II.   Breach of Contract

Custom Stud alleges that Meadow Lark made the following promises to Custom Stud:  (1) "to arrange for the safe and secure transport of certain equipment," (2) "to arrange for and retain a qualified and competent transporter for the [e]quipment," (3) "that during transport, all necessary and appropriate actions would be taken to protect and preserve the [e]quipment from damage," (4) "that the [e]quipment would be timely and securely transported and delivered to the intended recipient in an undamaged condition," and (5) "that the [e]quipment was to be covered at all times by a tarp." (Compl. ¶¶ 5-9.)

In the record before the Court, the email exchange between Custom Stud and Meadow Lark did not include these specific promises in writing.  (*See* Collett Decl. ¶ 4, Ex. 1.)  Rather, Custom Stud argues that Meadow Lark made these promises through some combination of a written master agreement and oral agreement.[1]  (Doc. No. 66 at 3, 11.)  Custom Stud, however, has failed to provide sufficient evidence of an oral or written contract.

---

[1]   In its briefing, Custom Stud also alludes to potential implied covenants based on Meadow Lark's past dealings with Custom Stud.  It is unclear whether Custom Stud is arguing that an implied covenant was breached.  Nevertheless, at this stage in litigation, it is not enough to merely allude to a new claim "for the purpose of avoiding summary judgment." *N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004).

### A. Written Contract

Custom Stud has laid out in its briefing a number of specific promises that Meadow Lark allegedly made to Custom Stud in a "master agreement." While the briefing is confident about the terms of this agreement, the evidence is less so. No one at Custom Stud can speak with any certainty about this alleged master agreement with Meadow Lark. Aside from a certificate of insurance—which explicitly states that it "confers no rights upon the certificate holder," (*see* Doc. No. 68 ("Kiehm Decl.") ¶ 2, Ex. A)—Custom Stud has failed to raise any evidence beyond the allegations within the complaint.

To start, no one at Custom Stud is aware of this agreement or its terms. Ann Muenchow, who sent the email to Meadow Lark requesting the delivery at issue, said she "d[oesn]'t remember any written or signed contracts between the two companies." (Ungar Decl. ¶ 7, Ex. D.) Moreover, Martin Kiehm, the President of Custom Stud, stated in his deposition that Custom Stud "typically" would have a master agreement made with a broker, but he could not "recall that there was a formal agreement for that specific load." (*Id.* ¶ 6, Ex. C.) Custom Stud has produced no evidence of anyone within the company with firsthand knowledge of this agreement, and Meadow Lark denies that such agreement ever existed. (Collett Decl. ¶ 6.) The strongest assertion that any employee at Custom Stud can make about the agreement is that one "most likely existed." (Ungar Decl. ¶ 6, Ex. C.) At this stage in the proceedings, that is not enough.

Custom Stud relies on a certificate of insurance sent by Meadow Lark as proof that a contract existed. Still, no one at Custom Stud can speak to why the certificate was sent,

5

what the insurance covered, or whether the certificate was related to a master agreement. And despite adequate time for discovery, Custom Stud has been unable to find answers to these questions.[2]

Summary judgment is the "put up or shut up" moment in litigation. *Goodman v. Nat'l Sec. Agency, Inc*, 621 F.3d 651, 654 (7th Cir. 2010). Custom Stud has failed to "put up" evidence of this agreement. Custom Stud's claim that a written contract *might* have existed and that the certificate of insurance *might* be proof of such contact, is not enough for a trier of fact to find that a contract existed, much less that Meadow Lark violated specific terms within the contract. For that reason, summary judgment is appropriate.

### B. Oral Contract

Custom Stud has brought forth even less evidence related to an alleged oral agreement with Meadow Lark. In an interrogatory, Custom Stud stated that it "believes" Muenchow "would have called Meadow Lark to discuss and arrange for the delivery," (Ungar Decl. ¶ 4, Ex. A). But even if that were true, no evidence supports the claim that additional promises were made during the phone call. Muenchow did not mention the phone call or any oral agreement with Meadow Lark in her deposition. (*See id.* ¶ 7, Ex. D.) Additionally, the deposition of Kiehm and declaration of John Salaba, a production manager at Custom Stud, do not mention an oral agreement of any kind. (*See* Salaba Decl.; Kiehm Decl.)

---

[2]   Custom Stud has not pointed to any deposition testimony of employees at Meadow Lark or interrogatories related to the insurance certificate or master agreement.

In sum, Custom Stud has provided no evidence as to who made the oral agreement, when the agreement was made, or what exactly was agreed upon. And again, Meadow Lark denies that such oral agreement was ever made. (Collett Decl. ¶ 7.) While Custom Stud argues that whether an agreement existed is a factual dispute, there are no facts here to dispute. Without any evidence that an oral agreement was made, the Court must dismiss the claim on summary judgment.

## CONCLUSION

For the reasons set forth above, the Court grants Meadow Lark's motion for summary judgment and dismisses Custom Stud's claim with prejudice.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Meadow Lark's motion for summary judgment (Doc. No. [60]) is **GRANTED**.

2. Plaintiff Custom Stud's claim against Defendant Meadow Lark is **DISMISSED WITH PREJUDICE**.

Dated: July 29, 2022               s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   United States District Judge